1  MORGAN, LEWIS & BOCKIUS LLP
2  Carrie A. Gonell, Bar No. 257163
   David J. Rashe, Bar No. 318400
3  Hailey A. Phelan, Bar No. 353990
4  600 Anton Boulevard, Suite 1800
   Costa Mesa, CA 92626-7653
5  Tel:   +1.714.830.0600
6  Fax:   +1.714.830.0700
   carrie.gonell@morganlewis.com
7  david.rashe@morganlewis.com
8  hailey.phelan@morganlewis.com

9  Attorneys for Defendant
10 GENERAL DYNAMICS INFORMATION
   TECHNOLOGY, INC.
11

12            **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14

15 VERONICA B. LOPEZ, individually,         Case No.: **'24 CV 1743 BAS DEB**
16 and on behalf of all others similarly
   situated,                                San Diego County Superior Court,
17                                          Case No. 24CU002514C
18              Plaintiff,
                                            **DEFENDANT GENERAL**
19        vs.                               **DYNAMICS INFORMATION**
                                            **TECHNOLOGY, INC'S NOTICE**
20 GENERAL DYNAMICS                         **OF REMOVAL TO FEDERAL**
   INFORMATION TECHNOLOGY,                  **COURT**
21 INC., a Virginia corporation; and DOES
22 1 through 10, inclusive,                 [28 U.S.C. §§ 1332, 1441, 1446, and
                                            1453]
23              Defendants.
24

25

26

27

28

MORGAN, LEWIS &
 BOCKIUS LLP
ATTORNEYS AT LAW
  COSTA MESA

DB2/ 49222289

1
2
3

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

4
5
6
7
8
9

    **PLEASE TAKE NOTICE THAT** Defendant General Dynamics Information Technology, Inc. ("Defendant" or "GDIT"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of San Diego, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the following grounds:

10

**I.    PROCEDURAL BACKGROUND**

11
12
13
14
15
16

    1.    On July 23, 2024, Plaintiff Veronica B. Lopez ("Plaintiff") filed a putative class action complaint in the Superior Court of California, County of San Diego, entitled *Veronica B. Lopez, individually, and on behalf of all others similarly situated, vs. General Dynamics Information Technology, Inc., a Virginia corporation; and DOES 1 through 10, inclusive*, Case No. 24CU002514C (the "Complaint").

17
18
19
20
21

    2.    Plaintiff served the Complaint on Defendant on August 30, 2024. True and correct copies of the Complaint, Summons, and all documents served with the Complaint and Summons are attached as **Exhibits A, B, and C**, respectively. Exhibits A, B, and C constitute all the pleadings, process, and orders served upon or by Defendant in the Superior Court action.

22
23
24
25
26

    3.    The Complaint seeks damages, penalties, and injunctive relief on behalf of a putative class for alleged violations of California law, including: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide required meal periods; (4) failure to provide required rest periods; (5) failure to reimburse business expenses; (6) failure to timely pay wages at

27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

DB2/ 49222289.5

1    termination; (7) failure to provide accurate itemized wage statements; and (8)

2    violations of the Unfair Competition Law. (Ex. A ("Compl.") ¶¶ 30-94).

3         4.    Plaintiff alleges the First through Eighth Causes of Action individually

4    and on behalf of a putative class defined as "All persons who worked for any

5    Defendant in California as an hourly, nonexempt employee at any time during the

6    period beginning four years before the filing of the initial complaint in this action and

7    ending when notice of class certification to the Class is sent." (*Id.* ¶ 23).

8    **II.    <u>REMOVAL IS TIMELY</u>**

9         5.    This Notice of Removal is timely, pursuant to 28 U.S.C. sections

10   1446(b)(3) and 1453, because it is filed within 30 days of Plaintiff's service of the

11   Summons and Complaint on GDIT.  *See Murphy Bros., Inc. v. Michetti Pipe*

12   *Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining that the 30-day period for

13   removal runs from the service of the summons and complaint); *see also* Fed. R. Civ.

14   P. 6(a).  No previous Notice of Removal has been filed or made with this Court for

15   the relief sought herein.

16   **III.    <u>THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION</u>**

17   **        <u>UNDER CAFA</u>**

18        6.    This lawsuit is a putative class action.[1] (Compl. ¶ 2, Prayer for Relief ¶¶

19   1-3).  Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to

20   28 U.S.C. sections 1441, 1446, and 1453 because: (i) diversity of citizenship exists

21   between at least one putative class member and Defendant; (ii) the aggregate number

22   of putative class members in the proposed class is 100 or greater; and (iii) the

23   Complaint places in controversy more than $5 million, exclusive of interest and costs.

24

25

26   [1] Defendant denies, and reserves the right to contest at the appropriate time, that this

27   action can properly proceed as a class action.  Defendant further denies Plaintiff's
     claims and denies that she can recover any damages.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

3

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

1    28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453.[2]   Although Defendant denies Plaintiff's

2    factual allegations and denies that Plaintiff—or the class she purports to represent—

3    are entitled to the relief requested in the Complaint, based on Plaintiff's allegations

4    in the Complaint and Prayer of Relief, all requirements for jurisdiction under CAFA

5    have been met in this case.

6           **A.      Diversity of Citizenship Exists**

7           7.     To satisfy CAFA's diversity requirement, a party seeking removal must

8    establish only that minimal diversity exists: that is, that one putative class member is

9    a citizen of a state different from any defendant.   28 U.S.C. § 1332(d)(2); *United*

10   *Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l*

11   *Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010)

12   (finding that to achieve its purposes, CAFA provides expanded original diversity

13   jurisdiction for class actions meeting the minimal diversity requirement set forth in

14   28 U.S.C. § 1332(d)(2)).

15          8.     "An individual is a citizen of the state in which he is domiciled . . . ."

16   *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter*

17   *v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).   For purposes of diversity

18   of citizenship jurisdiction, citizenship is determined by the individual's domicile at

19   the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d

20   546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

21   Domicile is determined by "an individual's 1) residence in a state, and 2) his intent

22   to remain indefinitely."   *Boon*, 229 F. Supp. 2d at 1019.   Evidence of continuing

23   residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d

24   340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519

25   (10th Cir. 1994).

26

27   _____

     [2] Defendant denies Plaintiff's factual allegations and denies that Plaintiff and
     members of the putative class are entitled to any relief whatsoever.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

4

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

DB2/ 49222289.5

9.      In her Complaint, Plaintiff alleges that she was employed by Defendant in California "as an hourly, non-exempt Quality Assurance Representative III from approximately November 8, 2021 to approximately April 7, 2023." (Compl. ¶ 7). Plaintiff alleges that she is a "California resident." (*Id.*). Plaintiff is not citizen of Virginia.

10.     For purposes of establishing diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings. . . ." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). GDIT is organized under the laws of the State of Virginia. GDIT's principal place of business and corporate headquarters are in Virginia, where its officers, direct, control, and coordinate corporate activities.

11.     GDIT is now, and was at the time of the filing of this action, a citizen of Virginia for purposes of determining diversity jurisdiction under CAFA. Therefore, diversity of citizenship exists under CAFA because Plaintiff is a citizen of a state different than GDIT. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**B.      The Putative Class Has More Than 100 Members**

12.     CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiff seeks to represent herself and "all other persons who

have been employed by any Defendants in California as an hourly-paid, non-exempt employee during the statute of limitations period applicable to the claims pleaded here." (Compl. ¶ 2). Based on Plaintiff's definition and according to GDIT's business records, the putative class contains more than 850 non-exempt employees who are working or have worked for GDIT in California between July 23, 2020 and July 23, 2024. Thus, the putative class contains more than 100 members.

## C. The Amount In Controversy Exceeds $5,000,000[3]

13. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

14. A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal

---

[3] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. GDIT refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. GDIT maintains that each of Plaintiff's claims lack merit and that GDIT is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, GDIT denies that this case is suitable for class treatment.

DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC'S NOTICE OF REMOVAL TO FEDERAL COURT

1    citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement

2    'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner*

3    *Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order

4    remanding the action to state court due to an "inappropriate demand of certitude from

5    [the defendant] over its assumptions used in calculating the amount in controversy"

6    for purposes of CAFA removal).

7        15.    The ultimate inquiry is what amount a complaint places "in

8    controversy," not what a defendant may actually owe in damages. *LaCross v. Knight*

9    *Transportation Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted)

10   (explaining that courts are directed "to first look to the complaint in determining the

11   amount in controversy"); s*ee also Jauregui*, 28 F.4th at 993 ("At that stage of the

12   litigation, the defendant is being asked to use the plaintiff's complaint—much of

13   which it presumably disagrees with—to estimate an amount in controversy. This is

14   also at a stage of the litigation before any of the disputes over key facts have been

15   resolved.")  The burden to establish the jurisdictional amount under CAFA "is not

16   'daunting,' as courts recognize that under this standard, a removing defendant is not

17   obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v.*

18   *Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008);

19   *see also LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based

20   on the contention that the class may not be able to prove all amounts claimed:

21   "Plaintiffs are conflating the amount in controversy with the amount of damages

22   ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1

23   (9th Cir. 2015) (holding that in alleging the amount in controversy, defendants "are

24   not stipulating to damages suffered, but only estimating the damages in

25   controversy").

26       16.    The allegations in the removing defendant's notice of removal may rely

27   on "a chain of reasoning that includes assumptions" and "an assumption may be

28

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

1    reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at

2    925 (9th Cir. 2019).   Moreover, Congress intended for federal jurisdiction to be

3    appropriate under CAFA "if the value of the matter in litigation exceeds $5 million

4    either from the viewpoint of the plaintiff or the viewpoint of the defendant, and

5    regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory

6    relief)."   Senate Judiciary Report, S. REP. 109-14, at 42.   As the United States

7    Supreme Court has advised, "no antiremoval presumption attends case invoking

8    CAFA" because Congress intended to "facilitate adjudication of certain class actions

9    in federal court." *Dart Cherokee*, 574 U.S. at 87.

10          17.    In assessing the amount in controversy, a court must "assume that the

11   allegations of the complaint are true and assume that a jury will return a verdict for

12   the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471

13   F. App'x. 646, 648 (9th Cir. March 8, 2012) (citing *Kenneth Rothschild Trust v.*

14   *Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).   When

15   the complaint is "lacking in factual detail," a defendant seeking removal is

16   particularly "justified in employing reasonable estimates" to establish the amount in

17   controversy. *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029

18   (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4

19   (E.D. Cal. May 1, 2007) (denying remand where defendant applied reasonable

20   assumptions to complaint that had no fact-specific allegations because a plaintiff

21   seeking to avoid removal "could have alleged facts specific to her claims which

22   would narrow the scope of the putative class or damages sought").

23          18.    While GDIT denies Plaintiff's factual allegations and denies that she or

24   the putative class she seeks to represent are entitled to any of the relief for which

25   Plaintiff has prayed, it is clear that, when the potential value of the claims of Plaintiff

26   and the putative class members are aggregated, the allegations within the Complaint

27   put into controversy an amount in excess of $5 million.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

1    19.    Plaintiff defines the relevant time period at issue in this action for the

2    Class as the period from four years immediately preceding the filing of this action

3    through the present. (Compl. ¶ 23).

4    **1.    Plaintiff's Third and Fourth Causes of Action for Failure to**

5    **Provide Meal and Rest Periods Puts at Least $3,920,000 in**

6    **Controversy**

20.    Plaintiff's Complaint alleges that "[t]hroughout the statutory period,

7    Defendants have wrongfully failed to provide Plaintiff and the Class with legally

8    compliant meal periods." (Compl. ¶ 16).    The Complaint further alleges that

9    "Defendants regularly failed to provide Plaintiff and the Class with both meal periods

10   as required by California law" by requiring "Plaintiff and the Class to work in excess

11   of five consecutive hours a day without providing 30-minute, continuous and

12   uninterrupted, duty-free meal period for every five hours of work, or without

13   compensating Plaintiff and the Class for meal periods that were not provided by the

14   end of the fifth hour of work or tenth hour of work." (*Id.* ¶¶ 16, 51).

15   21.    The Complaint also alleges that "Plaintiff and the Class were not

16   provided with uninterrupted and complete meal periods," and that "Defendants'

17   policy and practice was to not provide meal periods to Plaintiff and the Class in

18   compliance with California law." (*Id.* ¶ 16).

19   22.    With regard to Plaintiff's rest period claims, the Complaint alleges that

20   "Defendants often required Plaintiff and the Class to work in excess of four

21   consecutive hours a day without Defendants authorizing and permitting them to take

22   a net 1.0-minute, continuous and uninterrupted, rest period for every four hours of

23   work (or major fraction thereof), or without compensating Plaintiff and the Class for

24   rest periods that were not authorized or permitted." (*Id.* ¶ 17).

25   23.    The Complaint also alleges that "Defendants did not have adequate

26   policies or practices permitting or authorizing rest periods for Plaintiff and the Class,

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

1   nor did Defendants have adequate policies or practices regarding the timing of rest

2   periods," or " to verify whether Plaintiff and the Class were taking their required rest

3   periods." (*Id.*).  The Complaint further alleges that "Defendants' policy and practice

4   was to not authorize and permit Plaintiff and the Class to take rest periods in

5   compliance with California law." (*Id.*).

6        24.   Plaintiff's allegations that GDIT"regularly" failed to provide Plaintiff

7   and the Class with meal periods and that GDIT's "policy and practice" was to not

8   provide meal periods and rest periods conservatively supports at least a violation rate

9   of one missed meal period and one missed rest period per workweek per employee

10  for purposes of estimating the amount in controversy on these claims. *See, e.g., Garza*

11  *v. Brinderson Constructors, Inc.,* 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (finding

12  assumption that each putative class member missed one meal period and one rest

13  period per workweek was reasonable where plaintiff alleged he "regularly" missed

14  breaks and that "defendants maintained a 'policy or practice' of both meal and rest

15  break violations"); *Danielsson v. Blood Centers of Pac.,* 2019 WL 7290476, at *6

16  (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation rate for

17  meal and rest breaks during the putative class period—is reasonable given the

18  allegations of a 'pattern and practice' of such violations."); *Cavada v. Inter-Cont'l*

19  *Hotels Grp.*, Inc., 2019 WL 5677846, at *5 (S.D. Cal. Nov. 1, 2019) (denying motion

20  to remand and finding 20% violation rate was reasonable because the complaint

21  claimed that violations had occurred "from time to time" and for "some shifts," and

22  defendant had failed to compensate for such violations as a matter of "company

23  policy, practice and procedure").

24       25.   Since July 23, 2020, GDIT's non-exempt employees in California have

25  worked at least 70,000 workweeks, and the average hourly rate of these employees

26  is approximately $28.00. Plaintiff alleges she was scheduled to work 5 days in a

27

28

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

10

DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC'S NOTICE OF REMOVAL TO FEDERAL COURT

workweek and that her experience working for Defendants was "typical and illustrative." (Compl. ¶¶ 13-14).

26.     Therefore, with regard to Plaintiff's allegations that she and putative class members are owed meal premiums for "regularly" missed meal periods, and by conservatively assuming one meal premium is owed per workweek, Plaintiff's meal period claim places at least **$1,960,000** in controversy: that is, the $28 average hourly rate, multiplied by one missed meal period per week, multiplied by 70,000 workweeks.  Applying the same mathematical calculation to Plaintiff's claim that Defendant's "policy and practice was to not authorize and permit" rest periods to her and the putative class members and based on the other allegations in the Complaint, Plaintiff's rest period claim places an additional amount in controversy of at least **$1,960,000**, totaling at least **$3,920,000** in controversy based solely on Plaintiff's meal and rest period claims.

**2.     Plaintiff's Sixth Cause of Action for Waiting Time Penalties Puts at Least $1,890,000 in Controversy**

27.     Plaintiff's Complaint alleges that during the applicable limitations period:

> Defendants willfully failed and refused to timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, meal. period premium wages, and rest period premium wages. Further, Defendants did not pay Plaintiff and the Class their final paychecks immediately upon termination. (Compl. ¶ 19).

28.     The Complaint further alleges that "the employment of Plaintiff and many other members of the Class ended, i.e. was terminated by quitting or discharge, and the employment of others will be. However, during the relevant time period Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California [law]" upon separation of employment. (*Id.* ¶ 63).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

11

DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC'S NOTICE OF REMOVAL TO FEDERAL COURT

29.    Plaintiff alleges that, therefore "Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203." (*Id.* ¶ 66).

30.    Plaintiff alleges that she and all other putative class members have not been paid *some* amount of wages owed because of Defendant's alleged requirement that employees work off-the-clock during the class period. Specifically, the Complaint alleges that "throughout the statutory period, Plaintiff and the Class were required to work 'off-the-clock' and uncompensated" due to Defendant's requirement that employees "undergo temperature checks and undergo bag checks before clocking in for shifts" and that "[d]espite being required to perform these work tasks, Plaintiff and the Class were not compensated for this time worked." (Compl. ¶ 15). Plaintiff further alleges that Defendants have never paid her and the putative class members all wages owed upon termination. (*Id.* ¶ 63). Based on Plaintiff's allegations, it is appropriate to use a 100% violation rate for purposes of calculating the amount placed in controversy for alleged waiting time penalties owed to former employees. *See Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) (holding that a plaintiff's "allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid").

31.    Claims under Labor Code section 203 have a three-year statute of limitations. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).

32.    GDIT's review of data shows that between July 23, 2021 and June 23, 2024 (the three-year period preceding the filing of the Complaint and ending 30 days before the filing of the Complaint), more than 300 putative class members ended their

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

12

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

DB2/ 49222289.5

employment with Defendant while employed in California. The average final hourly rate of pay for these former employees was approximately $28.00 per hour.  Using a conservative estimate of 7.5 hours per day (even though the Complaint alleges Plaintiff was "typically scheduled to work in excess of 8 hours in a single workday" and her experience was "typical and illustrative" (Compl. ¶¶ 13-14)) and the average final hourly rate of pay, GDIT calculates that Plaintiff's claim for waiting time penalties under Labor Code section 203 places in controversy at least **$1,890,000** (7.5 hours per day multiplied by an average final wage rate of $28.00 per hour multiplied by 30 days, multiplied by 300 employees).

### 3.   Plaintiffs' Seventh Cause of Action for Wage Statement Violations Puts More Than $975,000 in Controversy

33.   Plaintiff alleges that, "[t]hroughout the statutory period, Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned." (Compl. ¶ 20).  Plaintiff further alleges that "Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list the true 'total hours worked by the employee,' and the failure to list the true net wages earned." (*Id*. ¶ 20).

34.   Plaintiff seeks "penalties and actual damages pursuant to California Labor Code § 226(e)." (Compl., Prayer for Relief ¶ 36).

35.   Labor Code section 226(a) requires employers to issue wage statements displaying, among other items, "(1) gross wages earned, (2) total hours worked by the employee, [and] (3) net wages earned . . ."

36.   Labor Code Section 226(e) provides that an employee suffering injury due to an employer's knowing and intentional failure to provide a compliant wage statement as required by Section 226(a) is entitled to recover fifty dollars ($50) for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

13

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), plus reasonable attorney's fees and costs. Labor Code § 226(e); *Chen v. Morgan Stanley Smith Barney, LLC,* 2014 WL 4961182, at *2 (C.D. Cal. Oct. 2, 2014).

37.    In determining the amount in controversy, it is appropriate to use a 100% violation rate for this cause of action based on the Complaint's allegations that all putative class members were required to work off-the-clock without pay due to Defendant's alleged requirement that they submit to temperature screenings and bag checks. Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Marano v. Liberty Mut. Grp., Inc.,* 2021 WL 129930, at *3 (C.D. Cal. Jan. 14, 2021); *see also Mejia v. DHL Express (USA), Inc.,* No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (upholding application of a 100% violation rate); *Ford v. CEC Entm't, Inc.,* No. CV 14-01420 RS, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("broad" allegations of "regular" violations support a 100% violation rate). Plaintiff's wage statement claim is premised on Defendant's alleged failure to pay all wages. (Compl. ¶¶ 63).

38.    GDIT's review of data shows that between July 23, 2023 and July 23, 2024, approximately 500 non-exempt employees who worked in California received approximately 10,000 wage statements. Using the number of these wage statements for each of these non-exempt employees and assigning $50 for each employees' initial wage statement and $100 for each employees' subsequent wage statements, with no employees exceeding the $4,000 statutory maximum, GDIT calculates that Plaintiff's wage statement claim places at least **$975,000** in controversy.

### D.    The Amount in Controversy Exceeds $5 Million

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC'S NOTICE OF REMOVAL TO FEDERAL COURT

DB2/ 49222289.5

1  39.     Aggregating the figures above for three of Plaintiff's eight causes of

2  action, the allegations in the Complaint put in controversy at least **$6,785,000**

3  (**$3,920,000 +$1,890,000** + **$975,000**).  Thus, the CAFA jurisdictional requirement

4  of $5 million is satisfied based on these claims alone, even without assessing the

5  value of Plaintiff's remaining causes of action or attorneys' fees.

6       **E.     Plaintiff's Request for Attorneys' Fees Places Additional Amounts**
        **in Controversy**

7

8  40.     Plaintiff seeks to recover "reasonable attorneys' fees" for each cause of

9  action. (Compl., Prayer for Relief ¶ 8, 13, 18, 23, 28, 33, 38, 43).  When an award of

10 attorneys' fees is authorized by statute, the request for attorneys' fees is properly

11 considered in determining the amount in controversy for removal purposes.  *See*

12 *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018)

13 (holding that "if a plaintiff would be entitled under a contract or statute to future

14 attorney's fees, such fees are at stake in the litigation and should be included in the

15 amount in controversy"); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D.

16 Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund); *Rodriguez*

17 *v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court

18 finds that using [the 25%] benchmark is the most appropriate way to calculate

19 attorneys' fees in order to establish the amount in controversy for jurisdictional

20 purposes.").  "A defendant does 'not need to prove to a legal certainty' that a plaintiff

21 will be awarded the proffered attorneys' fees in the removal notice." *Greene v.*

22 *Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart*

23 *Cherokee*, 574 U.S. at 88).

24 41.     Through their Third, Fourth, and Seventh Causes of Action, Plaintiff

25 seeks "reasonable attorneys' fees" under California law as well as "further relief as

26 the Court may deem equitable and appropriate." (Compl., Prayer for Relief ¶¶ 18-19,

27 23-24, 38-39). The Third and Fourth Causes of Action are based on alleged violations

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

15

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

DB2/ 49222289.5

of California Labor Code section 226.7, including the nonpayment of meal and rest premiums, which Plaintiffs describe as wages. (Compl. ¶¶ 19, 20, 51, 55). Labor Code section 218.5 authorizes reasonable attorneys' fees to a successful plaintiff in an action to recover unpaid wages. Additionally, under their Seventh Cause of Action, Plaintiffs seek "penalties and actual damages pursuant to California Labor Code § 226(e)." (Compl., Prayer for Relief ¶ 36). Labor Code sections 226(e)(1) and 226(h) authorize an award of reasonable attorneys' fees to a successful plaintiff.

42.    Based on the above estimate of $4,895,000 in controversy on Plaintiff's Third, Fourth, and Seventh Causes of Action, the amount of attorneys' fees placed in controversy by Plaintiff's Complaint is at least $1,223,750 (25% x $4,895,000).

43.    Thus, the total amount placed in controversy by Plaintiff's Complaint is at least **$8,008,750** ($3,920,000 +$1,890,000 + $975,000+$1,223,750).

**F.    Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold**

44.    As shown above, using conservative and reasonable assumptions grounded in the allegations of the Complaint to calculate the amount in controversy, GDIT has demonstrated that Plaintiff's claims for failure to provide meal and rest periods, failure to provide accurate wage statements, and waiting time penalties, as well as her request for attorneys' fees, place more than **$8,000,000** million in controversy.  However, in addition to this amount, Plaintiff's other causes of action place additional amounts in controversy, thus further exceeding the CAFA jurisdictional threshold.  As enumerated in Section I, Plaintiff brings additional causes of action for class wide relief for various alleged Labor Code violations including the failure to pay minimum wages (First Cause of Action), failure to pay overtime (Second Cause of Action), and failure to reimburse business expenses (Fifth Cause of Action). Each of these causes of action places additional amounts in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49222289.5

16

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

controversy beyond Plaintiff's Third, Fourth, Sixth, and Seventh Causes of Action, as well as any request for attorneys' fees on these other causes of action.

## IV.   VENUE

45.   This action was originally filed in the San Diego County Superior Court. Initial venue is therefore proper in this district pursuant to 28 U.S.C. §§ 84(d), 1441(a), and 1446(a), and because it encompasses the county in which this action has been pending.

## V.   NOTICE

46.   GDIT will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which this action is pending, as required under 28 U.S.C. § 1446(d).

## VI.   CONCLUSION

47.   Based on the foregoing, GDIT respectfully requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, GDIT respectfully requests the opportunity to present a brief and oral argument in support of its position that this action is subject to removal.

Dated:  September 30, 2024                    MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Carrie A. Gonell
    Carrie A. Gonell
    David J. Rashé
    Hailey A. Phelan
    Attorneys for Defendant
    GENERAL DYNAMICS
    INFORMATION TECHNOLOGY, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

17

DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC'S
NOTICE OF REMOVAL TO FEDERAL
COURT

DB2/ 49222289.5

**PROOF OF SERVICE**

*Veronica Lopez v. General Dynamics Information Technology, Inc., et al.*
*USDC Central District of California*

      I am a resident of the State of California, employed in the County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 600 Anton Blvd., Suite 1800, Costa Mesa, California 92626.

      On September 30, 2024, I served on the interested parties in this action the within document(s) entitled:

**DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC'S NOTICE OF REMOVAL TO FEDERAL COURT**

[ X ] **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ] **BY EMAIL:** the parties listed below were served electronically with the document(s) listed above by e-mailed PDF files on September 30, 2024. The transmission was reported as complete and without error. My electronic notification address is 600 Anton Blvd., Suite 1800, Costa Mesa, CA 92626. My e-mail address is patricia.martin@morganlewis.com.

| | |
|---|---|
| **THE SENTINEL FIRM, APC**<br>Seung L. Yang, Esq.<br>Tiffany Hyn, Esq.<br>355 S. Grand Ave., Suite 1450<br>Los Angeles, CA 90071<br>Tel: 213.985.1150 / Fax: 213.985.2155 | *Attorneys for Plaintiff VERONICA LOPEZ*<br><br>Email:<br>seung.yang@thesentinelfirm.com<br>tiffany.hyun@thesentinelfirm.com |

      [ X ] **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

      [ X ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

      Executed on September 30, 2024, at Costa Mesa, California.

_____
Patricia Martin

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

PROOF OF SERVICE

DB2/ 46961253.1