UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA B. LOPEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., *et al.*,<br><br>Defendants. | Case No. 24-cv-01743-BAS-DEB<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO REMAND (ECF No 8); AND**<br><br>**(2) GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND (ECF No. 7)** |

Plaintiff Veronica B. Lopez brings this putative class action against Defendants General Dynamics Information Technology, Inc. ("General Dynamics"), and Does 1 through 10 (collectively, "Defendants"), alleging multiple violations of the California Labor Code and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (First Amended Complaint ("FAC") ¶¶ 31–95, ECF No. 6.) Presently before the Court are two motions: (1) Lopez's Motion to Remand this action to the San Diego County Superior Court (Mot. to Remand, ECF No. 8); and (2) General Dynamics's Motion to

24cv1743

Dismiss and Strike Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) (Mot. to Dismiss, ECF No. 7).  Both Motions are fully briefed.  (*See* ECF Nos. 9, 10, 11, 12.)

The Court finds both Motions suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 8) and **GRANTS WITH LEAVE TO AMEND** General Dynamics's Motion to Dismiss (ECF No. 7).

## BACKGROUND

### I.  Factual Background

Veronica Lopez, a former employee of General Dynamics, worked as an "hourly, non-exempt Quality Assurance Representative" in San Diego, California, from approximately November 8, 2021, to April 7, 2023.  (FAC ¶ 7.)  Lopez alleges that Defendants, through their business practices, violated multiple provisions of the California Labor Code and engaged in conduct that violated the UCL.  (*Id.* ¶¶ 1, 89.)  Specifically, she asserts eight causes of action: (1) failure to pay minimum wages (Cal. Lab. Code §§ 204, 1194, 1194.2, 1197); (2) failure to pay overtime compensation (Cal. Lab. Code §§ 1194, 1198); (3) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512); (4) failure to authorize and permit rest periods (Cal. Lab. Code § 226.7); (5) failure to indemnify necessary business expenses (Cal. Lab. Code § 2802); (6) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201–203); (7) failure to furnish accurate itemized wage statements (Cal. Lab. Code § 226); and (8) unfair, unlawful, and fraudulent business practices in violation of the UCL (Cal. Bus. & Prof. Code § 17200), which are predicated on the alleged Labor Code violations.  (*Id.* ¶¶ 31–95.)  Lopez brings this action individually and as a class action on behalf of "certain current and former employees of Defendants . . . who have been employed by [] Defendants in California as [] hourly-paid, non-exempt employee[s] during the statute of limitations period applicable to the claims pleaded here."  (*Id.* ¶ 2.)

24cv1743

## II. Procedural Background

On September 30, 2024, General Dynamics removed the action from San Diego County Superior Court, invoking the Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (Notice of Removal ("NOR"), ECF No. 1.) Lopez filed the operative FAC approximately two months later.  (ECF No. 6.)

Shortly thereafter, on December 9, 2024, General Dynamics moved pursuant to Rules 12(b)(6) and 12(f) to dismiss the Eighth Cause of Action in the FAC ("the Eighth Cause of Action"), which alleges violations of the UCL, and to strike language asserting those allegations and seeking injunctive relief.  (ECF No. 7.)  Lopez filed an opposition (ECF No. 9), and General Dynamics filed a reply (ECF No. 10). Separately, about a month after General Dynamics filed its motion, Lopez moved to remand the case, arguing that General Dynamics failed to establish the amount in controversy exceeds $5 million and invoking the "local controversy" exception to CAFA. (ECF No. 8.)  General Dynamics filed an opposition (ECF No. 11), and Plaintiff replied (ECF No. 12).   Thereafter, General Dynamics submitted its Notice of Supplemental Authority in Support of Opposition to Lopez's Motion to Remand (ECF No. 13), to which Lopez filed a response (ECF No. 15).

## MOTION TO REMAND

## I. Legal Standard

"A motion to remand is the proper procedure for challenging removal."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)).  The propriety of removal depends on whether the case could have been originally filed in federal court.  *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("Defendants generally may remove 'any civil action brought in a State court in which the [federal] district courts . . . have original jurisdiction.'" (quoting 28 U.S.C. § 1441(a))).  Whether removal was proper is determined primarily based on the pleadings as they existed at the time the complaint was filed and removal was effected.  *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

24cv1743

The Class Action Fairness Act expands original jurisdiction, as its "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (citation omitted) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."). Furthermore, CAFA extends "federal jurisdiction to state-law claims in class actions under relaxed diversity requirements." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1036 (9th Cir. 2020).

Under CAFA, federal courts have original jurisdiction over class actions when the following requirements are satisfied: (1) minimal diversity exists; (2) the proposed class includes at least 100 members; and (3) the amount in controversy exceeds $5 million, inclusive of attorneys' fees but exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (5). Class members' claims may be aggregated to satisfy the amount in controversy requirement. *Ibarra*, 775 F.3d at 1195. The amount in controversy "encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 791 (9th Cir. 2018) (citation omitted) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018)). As a general rule, courts strictly construe removal statutes against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). By contrast, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. Nevertheless, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. But when, as here, a plaintiff challenges the defendant's asserted amount in controversy, "evidence establishing the amount is required." *Id*. "In such a case, both

24cv1743

sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

Under this standard, a defendant may rely on "reasonable assumptions" to support its amount in controversy showing. A*rias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1197–99). As the Ninth Circuit has explained, "in assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'"[1] *Id.* at 925 (quoting *Ibarra*, 775 F.3d at 1199). However, those "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* In addition, a defendant may rely on "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

## II.    Analysis

Lopez advances two principal arguments in support of her Motion to Remand: first, that General Dynamics has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million as required under CAFA; and second, that the "local controversy" exception applies, thereby mandating remand to state court. (ECF No. 8-2 at 1:11–3:1.)    The Court begins by addressing Lopez's challenge to General Dynamics's amount in controversy calculation, including her objections to the violation

---

[1] General Dynamics submitted a Notice of Supplemental Authority citing *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025), in support of its opposition to Lopez's Motion to Remand. (ECF No. 13.) In *Perez*, the Ninth Circuit vacated a sua sponte remand order, holding that the district court improperly imposed an unduly high evidentiary burden by requiring proof to support the amount in controversy. *Id.* at 810. The Ninth Circuit reaffirmed that a removing defendant "need include only a plausible allegation," and that "[e]vidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 808 (quoting *Dart Cherokee*, 574 U.S. at 89). Although Lopez argues that *Perez* is distinguishable because her Motion to Remand affirmatively contests removal, the Court finds that distinction unpersuasive.

24cv1743

rates and assumptions underlying General Dynamics's estimates.  The Court then turns to the applicability of the local controversy exception under 28 U.S.C. § 1332(d)(4), evaluating whether she has met her burden to show the statutory criteria are satisfied.

### A.   "Short and Plain" Statement Under 28 U.S.C. § 1446(a)

Lopez raises a factual attack on General Dynamics's amount in controversy assertions, contending that the company relies on unsupported assumptions and fails to provide evidentiary support, despite having exclusive access to the relevant employment records.  (ECF No. 8-2 at 1:21–2:11.)  Specifically, Lopez argues General Dynamics "does not provide a single document in support of [its] assumptions[,]" and asserts that "[r]ather than develop a factual record on Plaintiff's claims prior to removal in state court, Defendant removed without any evidence that the violation rates it proposes are actually at issue in this litigation."  (*Id.* at 2:6–9.)  However, the United States Supreme Court has made clear that a notice of removal is required to provide only a "short and plain statement of the grounds for removal" and need not include evidentiary submissions at the outset.  *See Dart Cherokee*, 574 U.S. at 83–84.  More precisely, it "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id.* at 89.  As previously noted, it is only after the plaintiff contests the removal, as Lopez does here, that the defendant must then establish, "by a preponderance of the evidence," that the amount in controversy exceed the jurisdictional threshold.  *Id.* at 88–89.

Lopez further takes the position that General Dynamics's "failure to provide competent evidence is particularly inexcusable since Defendant, as the employer, has ready access to all the facts, records, and information necessary to support its amount in controversy calculations."  (ECF No. 8-2 at 9:12–15.)  Nevertheless, as other courts in this district have explained, "a party's access to additional information does not necessarily render the assumptions made by that party unreasonable."  *Shachno v. Marriott Int'l, Inc.*, No. 22-CV-1215-TWR (JLB), 2023 WL 316367, at *8 (S.D. Cal. Jan. 19, 2023).

> As is inescapable at this early stage of the litigation, the removing party must be able to rely "on a chain of reasoning that includes assumptions to satisfy

its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," as long as the reasoning and underlying assumptions are reasonable.

*Jauregui*, 28 F.4th at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).  Hence, when General Dynamics filed its Notice of Removal, it was required only to plausibly allege the amount in controversy exceeds $5 million.

## B.    General Dynamics's Calculation of the Amount in Controversy

General Dynamics asserts that, based on conservative estimates and considering only four of Lopez's eight claims—specifically, meal period violations, rest period violations, waiting time penalties, and wage statement violations—the amount in controversy exceeds CAFA's $5 million jurisdictional threshold.  (ECF No. 11 at 2:19– 3:3.)  According to General Dynamics, "the amount in controversy for purposes of jurisdiction under CAFA totals at least $6 million, even before considering Plaintiff's requests for attorneys' fees."  (*Id.* at 2:22–3:2.)

To determine the amount in controversy, General Dynamics makes assumptions based upon Lopez's initial Complaint, filed in state court before removal, and a declaration from its Data Analytics Director, Michele Shuster.  (NOR, Ex. A ("Compl."), ECF No. 1-2; Declaration of Michele Shuster ("Shuster Decl.") ¶ 2, ECF No. 11-2.)  Ms. Shuster's Declaration provides an analysis of General Dynamics's employment records, which supports an approximation of the amount in controversy based upon the totals of 70,448 workweeks worked by 869 putative class members between July 23, 2020, and July 23, 2024.  (Shuster Decl. ¶ 3.)  These employees were typically scheduled for 7–8 hour shifts, five days per week, and recorded an average of 38 hours per week with an average shift length of 7.6 hours.  (*Id.*)  Their average hourly rate of pay was $28.38.  (*Id.* ¶ 4.)

Ms. Shuster also identified from her review of the employee data that 308 of the 869 hourly non-exempt employees ended their employment between July 23, 2021, and June 23, 2024.  (*Id.* ¶ 5.)  These former employees worked an average of 38 hours per week and had an average base pay rate of $27.63.  (*Id.*)  Additionally, Ms. Shuster determined that

General Dynamics provides wage statements to non-exempt employees in California on a biweekly basis and that 529 such employees collectively received approximately 10,652 wage statements between July 23, 2023, and July 23, 2024, with none receiving more than 27 statements during that period.  (*Id.* ¶ 6.)

### 1.    Unpaid Meal and Rest Periods

Lopez alleges that Defendants failed to provide compliant meal and rest periods in violation of California Labor Code §§ 226.7 and 512, as well as the applicable Industrial Welfare Commission ("IWC") Wage Orders.  (*Id*. ¶¶ 49–56.)  According to the Complaint, Defendants "maintained a systematic, company-wide policy and practice" of not authorizing or permitting employees to take meal and rest breaks in compliance with California law.  (*Id.* ¶¶ 4, 16–17, 51, 55.)

Lopez contends that employees were neither fully relieved of duty nor adequately informed of their rights to take a meal or rest period and were required to perform off-the-clock work—including temperature checks and bag inspections—before clocking in for shifts.  (*Id.* ¶¶ 15–17.)  She asserts that "Defendants made it impossible or impracticable to take these uninterrupted [meal and rest] periods."  (*Id.* ¶¶ 51, 55.)  She also avers that Defendants lacked adequate policies or practices to "verify" rest periods and failed to "maintain accurate records of employee work periods[,]" rendering it infeasible to demonstrate that rest breaks were properly provided.  (*Id.* ¶ 17.)  Based on these assertions, Lopez seeks to be "paid one hour of additional wages at the regular rate of pay for each workday [] she was not provided with all required meal [or rest] period(s), plus interest thereon."  (*Id.* ¶¶ 52, 56.)

Using the information provided in the Shuster Declaration and based on Lopez's allegation that Defendants maintained a "policy and practice" of failing to provide compliant meal and rest periods (Compl. ¶ 4.), General Dynamics assumes, on a conservative basis, that each putative class member missed one meal and one rest period per workweek, yielding an assumed 20% violation rate.  (ECF No. 11 at 10:16–19, 11:6–18.)  As a result, General Dynamics estimates that Lopez's meal and rest period claims

- 8 -

place at least $3,998,628 in controversy, based on 70,448 workweeks, an average hourly rate of $28.38, and the assumed violation rate. (*Id.* at 11:18–22.)

### 2.    Noncompliant Payment of Wages When Due

Lopez alleges that throughout the statutory period, Defendants willfully failed to timely pay all wages due—including minimum, overtime, meal and rest period premium wages—at the time of termination, or within seventy-two hours of leaving Defendants' employ, in violation of California Labor Code §§ 201 and 202. (Compl. ¶¶ 19, 63–64.) Lopez thus seeks waiting time penalties under Labor Code § 203 for up to 30 days' wages. (*Id.* ¶¶ 65–66.)

To calculate the amount in controversy for this cause of action, Ms. Shuster identifies 308 employees whose employment ended between July 23, 2021, and June 23, 2024, reflecting the applicable three-year period for Labor Code § 203. (Shuster Decl. ¶ 5.) Ms. Shuster further calculated that these former employees worked an average of 7.6 hours per day and earned an average final hourly rate of $27.63. (*Id.*) Labor Code § 203 provides for a waiting time penalty of up to 30 days of wages at the employee's daily rate of pay. Therefore, General Dynamics calculates that Lopez's claim for waiting time penalties under Labor Code § 203 places at least $1,940,289 in controversy. (ECF No. 11 at 14:14–18.)

### 3.    Noncompliant Wage Statements

Lopez alleges that Defendants "intentionally and willfully" violated California Labor Code § 226 by failing to provide "accurate, itemized wage statements" showing all applicable hourly rates and gross and net wages earned, including total hours worked, wages for regular and overtime hours, and premium wages for missed meal and rest periods. (Compl. ¶¶ 20, 70.) Lopez claims that "the wage statements inaccurately understated the wages, hours, and wage[] rates . . . and Plaintiff and the Class were paid less than the wages and wage rates to which they were entitled." (*Id.* ¶ 20(h).)

Relying again on the Shuster Declaration, General Dynamics calculates that 529 California non-exempt employees received approximately 10,652 wage statements during

the one-year statutory period applicable to § 226. (Shuster Decl. ¶ 6.) General Dynamics assumes one violation per wage statement and, applying the statutory penalties of $50 for the initial violation and $100 for each subsequent violation, calculates the amount in controversy for wage statement violations to be $1,038,750, an amount that exceed the $975,000 initially estimated in the Notice of Removal. (ECF No. 11 at 16:17–19; NOR ¶ 38.)

### 4. Attorneys' Fees

Lopez's Complaint seeks recovery of "reasonable attorneys' fees" in connection with her alleged Labor Code violations, including pursuant to California Code of Civil Procedure § 1021.5, which authorizes a court to award attorneys' fees to a successful party in any action that enforces an important right affecting the public interest. (Compl., Prayer for Relief ¶¶ 8, 13, 18, 23, 28, 33, 38, 43.) General Dynamics calculates attorneys' fees as 25% of the amount placed in controversy by Lopez's Third Cause of Action for failure to provide meal periods, Fourth Cause of Action for failure to provide rest periods, and Seventh Cause of Action for failure to provide accurate wage statements. (ECF No. 11 at 19:20–22.) Consequently, General Dynamics asserts that the amount in controversy for removal purposes should include at least $1,259,344 in estimated attorneys' fees. (*Id.*)

### C. Whether the Amount in Controversy Is Met

#### 1. Legal Standard Governing Challenges to the Amount in Controversy

A plaintiff "can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are 'insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, "[a] factual attack 'contests the truth of the . . . allegations' themselves." *Harris*, 980 F.3d at 699 (citation modified) (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). A factual

- 10 -

attack may also make a "reasoned argument as to why any assumptions on which [defendant's allegations] are based are not supported by evidence." *Harris*, 980 F.3d at 700 (citing *Salter*, 974 F.3d at 964; *Ibarra*, 775 at 1199.)

General Dynamics, like the defendant in *Harris*, construes Lopez's Motion to Remand as raising a factual challenge. *Harris*, 980 F.3d at 700. By submitting proof in the form of Ms. Shuster's Declaration, General Dynamics offers further evidence in support of its assumptions. *Id.* Once the plaintiff contests the reasonableness of a defendant's assumptions, the defendant "need not make [plaintiff's] case for [her] or prove the amount in controversy." *See id.* at 701. However, the defendant now bears "the burden of proving by a preponderance of the evidence that its assumptions [are] reasonable." *Id.* The Court applies this standard in evaluating Lopez's challenges to General Dynamics's proposed violation rates, waiting time penalties, and estimated attorneys' fees.

## 2. Lopez's Challenge to General Dynamics's Showing

Lopez argues that she is not required to present contrary evidence until General Dynamics satisfies its burden establishing the amount in controversy required for removal. (ECF No. 12 at 3:8–9.) While there is no per se rule requiring a plaintiff to produce evidence or propose alternative assumptions to put the defendant to its burden, s*ee Ibarra* 775 F.3d at 1199, once a defendant presents reasonable assumptions supported by evidence, as General Dynamics has done here, a plaintiff may rebut them by submitting declarations or other evidence addressing the frequency or nature of the alleged violations. *Id.*; s*ee also Harris*, 980 F.3d at 700. Lopez has not done so in her reply. Instead, she reiterates her objections to the reasonableness of General Dynamics's assumption and the applicability of the local controversy exception to CAFA. (ECF No. 12 at 1:6–13.) She further contends that General Dynamics has failed "to meet its burden of proof by a preponderance of the evidence" (*Id.* at 1:5–6), and argues that it did not "supply the proper equations used to reach the alleged sums" (*Id.* at 1:15–17).

Ultimately, the Court disagrees with Lopez's contention that General Dynamics's assumptions are either unsupported by evidence or unreasonable. General Dynamics

24cv1743

responds to Lopez's factual attack with the Declaration of Michele Shuster, who has analyzed its employment records—"includ[ing] personnel files, dates of employment, time records, and pay data"—to inform the company's calculations. (Shuster Decl. ¶ 2.) Based on this analysis and the allegations in the Complaint, the Court finds that General Dynamics has made reasonable assumptions in support of its amount in controversy estimates. *See Dart Cherokee*, 574 U.S. at 89; *Arias*, 936 F.3d at 925 ("An assumption may be reasonable if it is founded on the allegations of the complaint.")

Whether the alleged violations occur from time to time, as a part of a pattern and practice, or uniformly, as alleged in Lopez's Complaint, has a substantial bearing on the amount in controversy calculation. *See Arias*, 936 F.3d at 925–26 (differentiating the varying allegations a plaintiff may use in the complaint and the corresponding impact it has on the reasonableness of the assumed violation rate). The frequency of alleged violations informs the court's adoption of a violation rate expressed as a percentage when calculating the amount in controversy. *See Powell v. USI Ins. Serv.*, LLC, No. 2:23-cv-04129-ODW (BFMx), 2023 WL 6276578, at *4–5 (C.D. Cal. Sept. 25, 2023) (distinguishing between allegations of a pattern and practice, which could not reasonably support a 100% violation rate, and allegations of a uniform policy, which could plausibly support a 100% violation rate).

As previously discussed, Lopez describes Defendants' conduct as being attributable to a "systematic, company-wide policy and practice," and further alleges that it was carried out in a "willful and deliberate" manner. (Compl. ¶¶ 4–5.) Moreover, she avers that the violations occurred "throughout the statutory period" and that her experience working for Defendants was "typical and illustrative." (*Id.* ¶ 14.)

### i.    Violation Rate

#### a.    Missed Meal and Rest Periods

General Dynamics calculates the amount in controversy for missed meal breaks and rest periods using the relevant employment records and then applies a violation rate of 20% for both claims, "based on an assumed rate of just one meal period violation and one rest

period violation per work week." (ECF No. 11 at 8:19–9:1.) Thus, the Court evaluates the violation rates for both claims in tandem, as Lopez's Complaint alleges that "[t]hroughout the statutory period . . . Defendants' policy and practice was to not provide meal periods to Plaintiff and the Class," and similarly, "to not authorize and permit Plaintiff and the Class to take rest periods in compliance with California law." (Compl. ¶¶ 16–17.)

District courts have held that violation rates ranging from 25% to 60% may be reasonably assumed as a matter of law based on "pattern and practice or policy and practice allegation[s]." *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (citation modified); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (applying a 50% violation rate to the meal period claim and a 30% violation rate to the rest period claim); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (applying a 60% violation rate for the meal period claim and a 30% violation rate to the rest period claim); *Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (applying a 60% violation rate to both the meal and rest period claims).

According to the Complaint, Lopez attributes the missed meal and rest periods to a "systematic, company-wide policy and practice," language that General Dynamics relies upon to support a 20% violation rate. (Compl. ¶ 4.) Because the amount in controversy is determined based on the allegations in the Complaint, and General Dynamics appropriately relies on those allegations, the Court finds that the assumed 20% violation rate is a reasonable assumption. *See Fritsch*, 899 F.3d at 792; *Ibarra*, 775 F.3d at 1199. As a result, the Court finds persuasive General Dynamics's calculation that produces a total of $3,998,628 in controversy for the missed meal and rest period claims.

### b.    Wage Statement and Waiting Time Penalties

General Dynamics assumes one violation per wage statement and that all former employee class members are entitled to waiting time penalties. (ECF No. 11 at 16:22–25, 13:24–25.) This assumption effectively applies a 100% violation rate for both claims. The Court finds General Dynamics's violation rate is reasonable based upon the allegations in

the Complaint, provided these claims are derivative of Lopez's other claims. (*Id.* at 17:10–13.) This is consistent with Lopez's position, as she contends that her "wage statement allegations are derivative of [her] allegation that Defendant[s] failed to pay them and the putative class members for all hours worked." (ECF No. 8-2 at 14:23–25.)

Lopez's Complaint alleges that "Defendants maintained a systematic, company-wide policy and practice of . . . [f]ailing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders." (Compl. ¶ 4(g).) She further asserts that Defendants "fail[ed] to pay Plaintiff and [] Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, [] in violation of California Labor Code §§ 201 and 202." (*Id.* ¶ 64.) Moreover, because the Court has found a 20% violation rate reasonable for Lopez's missed meals and rest break claims, assuming one violation per pay period is likewise reasonable. *See Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *8–9 (S.D. Cal. Nov. 1, 2019) (finding that based upon one missed meal and rest period, defendant's assumption of a 100% violation rate for wage statement and waiting time penalties was reasonable); *Brumbach v. Hyatt Corp.*, No. 20-cv-2231-WQH-KSC, 2021 WL 926692, at *9 (S.D. Cal. Mar. 11, 2021) (concluding that where a plaintiff alleges a "consistent and uniform policy," it is reasonable to assume that every employee who separated from employment experienced unpaid wages).

Additionally, the Complaint asserts "Plaintiff and the Class are entitled to recover from Defendants . . . up to 30 days maximum pursuant to California Labor Code § 203." (Compl. ¶ 66.) Where, as here, a plaintiff seeks maximum statutory penalties, "Defendant need not produce evidence, and it is reasonable to assume . . . that Plaintiff could obtain [the] statutory penalty of [the] maximum 30 days." *See Avila*, 432 F. Supp. 3d at 1188 (emphasis omitted). Thus, the Court finds General Dynamics's 100% violation rate for these derivative claims to be supported by the Complaint and based on reasonable assumptions. Accordingly, the Court finds that General Dynamics's estimated $1,940,289

1  in waiting time penalties and $1,038,750 in wage statement violations are reasonable for
2  purposes of establishing the amount in controversy.

3        **ii.**    **Attorneys' Fees**

4        General Dynamics estimates attorneys' fees based on the amount it places in
5  controversy from Lopez's claims for meal and rest period violations and wage statement
6  violations.  (ECF No. 11 at 19:20–22.)  In support, it cites a prior comparable case, *Enrique*
7  *Lopez v. Pacific Dutch Group, LLC*, No. 21CV01197 (Cal. Super. Ct. Santa Barbara Cty.,
8  Aug. 1, 2022) ("*Pacific Dutch Group*"), in which Lopez's counsel, Mr. Seung L. Yang,
9  secured a 35% fee award while at a different firm.  (ECF No. 11-4, Exs. B, C.)  Based on
10  this showing, General Dynamics seeks an application of a 25% benchmark, yielding an
11  estimated $1,259,344 in attorneys' fees.   However, Lopez contends that General
12  Dynamics's attorneys' fee estimate "disregards the fact that some of the claims do not
13  allow for the statutory recovery of attorneys' fees." (ECF No. 12 at 13:8–10.)  The Court
14  agrees.

15        Courts have recognized that a 25% benchmark for attorneys' fees does not apply
16  automatically.  *See Arias*, 936 F.3d at 928; *Avila*, 432 F. Supp. 3d at 1192.  Thus, "the
17  defendant must prove the amount of attorneys' fees at stake by a preponderance of the
18  evidence; [the court] may not relieve the defendant of its evidentiary burden by adopting a
19  per se rule for one element of the amount at stake in the underlying litigation." *Fritsch*,
20  899 F.3d at 796.  Furthermore, "when a statute or contract provides for the recovery of
21  attorneys' fees, prospective attorneys' fees must be included in the assessment of the
22  amount in controversy." *Arias*, 936 F.3d at 922 (citing *Fritsch*, 899 F.3d at 794).

23        A defendant may satisfy its evidentiary burden in multiple ways.  For example, it
24  may identify awards in cases "similar enough to the case at hand that the court can conclude
25  it is more likely than not that the plaintiff may incur a similar fee award." *Weaver v.*
26  *Amentum Servs., Inc.*, No. 22-CV-00108-AJB-NLS, 2022 WL 959789, at *5 (S.D. Cal.
27  Mar. 30, 2022).  A defendant may also "introduce[] evidence of billing rates for Plaintiffs'
28  counsel" or evidence of "fees Plaintiffs' counsel has been awarded in similar cases." *Id.*;

24cv1743

*see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (accepting estimated attorneys' fees of 25% given "evidence that Greene's attorney sought 35 percent in a similar case").

Here, General Dynamics meets its evidentiary burden for seeking an application of a 25% benchmark by identifying a comparable case,[2] *Pacific Dutch Group*, in which Lopez's counsel previously obtained a 35% fee award. However, as the Ninth Circuit has made clear, attorneys' fees are "limited by the applicable . . . statutory requirements that allow fee-shifting in the first place." *Fritsch*, 899 F.3d at 796.

While General Dynamics seeks to apply a 25% benchmark across multiple claims, attorneys' fees are not available on meal and rest period claims under California Labor Code § 226.7. *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal.4th 1244, 1252 (2012). That said, for claims alleging an employer's failure to provide accurate, itemized wage statements, Labor Code § 226 expressly authorizes the recovery of reasonable attorneys' fees by the prevailing employee. Cal. Lab. Code § 226(e)(1), (h). Accordingly, applying a 25% attorneys' fee rate to the $1,038,750 attributed by General Dynamics to the wage statement

---

[2] Pursuant to Federal Rule of Evidence 201, General Dynamics requests that the Court take judicial notice of the following publicly filed documents in support of its calculation of attorneys' fees: (1) the Articles of Incorporation for The Sentinel Firm, APC—counsel of record for Lopez in this matter—filed with the California Secretary of State on June 7, 2023, and available at https://bizfileonline.sos.ca.gov (ECF No. 11-4, Ex. A); (2) the Minute Order entered by the Santa Barbara County Superior Court on August 1, 2022, granting final approval of the class action settlement in *Pacific Dutch Group* (*Id.* Ex. B); and (3) the Declaration of Allen Feghali, then co-counsel for the plaintiff in *Pacific Dutch Group*, filed in support of final approval of settlement in that action on July 8, 2022 (*Id.* Ex. C). The Sentinel Firm, APC was formed in 2023 by Seung L. Yang, formerly a partner at Moon & Yang, APC, the firm that represented the plaintiff in the *Pacific Dutch Group* settlement action.

These documents are proper subjects of judicial notice as matters of public record whose authenticity is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("[A] court may take judicial notice of matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." (citation modified)); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record"); *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1075 n.3 (E.D. Cal. 2016) (taking judicial notice of a filing with the California Secretary of State). Accordingly, the request for judicial notice is **GRANTED**.

24cv1743

violations yields an estimated $259,687.50 in attorneys' fees.  However, even excluding attorneys' fees entirely, General Dynamics's amount in controversy calculation still exceeds the $5,000,000 threshold required under CAFA.

In sum, General Dynamics's estimated damages for Lopez's Third, Fourth, and Seventh Causes of Action—based on reasonable assumptions grounded in the allegations set forth in the Complaint—combined with an attorneys' fees estimate properly limited to the statutory violations that allow for fee recovery, results in a total amount in controversy of $7,237,354.50.

| Cause of Action | Amount in Controversy |
|---|---|
| Failure to Provide Required Meal and Rest Periods | $3,998,628.00 |
| Failure to Provide Accurate Itemized Statement Penalties | $1,038,750.00 |
| Failure to Pay Wages When Due Penalties | $1,940,289.00 |
| **Total** | **$6,977,667.00** |
| Attorneys' Fees (25% Benchmark) | $259,687.50 |
| **Total with Attorneys' Fees** | **$7,237,354.50** |

### D.    Whether the "Local Controversy" Exception to CAFA Applies

In addition to challenging the evidentiary basis and reasonableness of General Dynamics's assumptions regarding the amount in controversy, Lopez argues that the Court should remand this matter because "it falls squarely within the 'local controversy' exception of CAFA, 28 USC § 1332(d)(4)(A)."  (ECF No. 8-2 at 2:12–13.)  "The local controversy exception to CAFA jurisdiction is a narrow exception, and Plaintiff[] bear[s] the burden of showing its application." *Allen v. Boeing* Co., 821 F.3d 1111, 1116 (9th Cir. 2016) (citing *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015)).

"However, if the exception applies, the district court must remand the case to state court." *Id.* (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007)).

The "local controversy" exception applies when:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
> > (aa) from whom significant relief is sought by members of the plaintiff class;
> >
> > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> >
> > (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed . . . .

28 U.S.C. § 1332(d)(4)(A)(i). "In determining whether these requirements are satisfied, 'a federal district court is limited to the complaint.'" *Evangelista v. Just Energy Mktg. Corp.*, No. SACV 17-02270-CJC(SSx), 2018 WL 1026370, at *2 (C.D. Cal. Feb. 21, 2018) (citing *Coleman v. Estes Express Lines*, 631 F.3d 1010, 1012 (9th Cir. 2011)).

Here, Lopez has not met the burden of establishing that all elements of the local controversy exception are satisfied; most notably, she has not shown that General Dynamics is a citizen of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).[3]    Although Lopez asserts that General Dynamics is a

---

[3] The Court notes that General Dynamics also argues Lopez has failed to demonstrate that more than two-thirds of the putative class members were domiciled in California at the time of removal and that she failed to timely invoke the local controversy exception. However, because the Court finds that Lopez

"California based defendant, who has its principal place of business in California" (ECF No. 8-2 at 17:6–8), the paragraph of the Complaint cited in support states only that General Dynamics is "(a) A Virginia corporation that maintains offices, has agents, employs individuals, and/or transacts business in the State of California; [and] (b) A business entity conducting business in numerous counties throughout the State of California, including in San Diego." (Comp. ¶ 9.)   These allegations are insufficient to establish that General Dynamics is a California citizen for purposes of the local controversy exception. As a corporate defendant, General Dynamics is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."   28 U.S.C. § 1332(c)(1).   "This corporate dual citizenship rule applies to CAFA actions." *Bruns v. TD Ameritrade, Inc.*, No. 22cv1369-L-JLB, 2022 WL 4229309, at *1 (S.D. Cal. Sept. 13, 2022).   Accordingly, because General Dynamics is incorporated in Virginia—and Lopez concedes as much—the only way it could satisfy the citizenship requirements under the local controversy exception is if its principal place of business is in California.

A corporation's principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).   Commonly referred to as the corporation's "nerve center," the principal place of business "should normally be the place where the corporation maintains its headquarters." *Id.* at 93.   Simply alleging that General Dynamics "has its principal place of business in California," as Lopez does in its Motion to Remand (ECF No. 8-2 at 17:6–8), and supporting that assertion with generalized claims that Defendant "maintains offices, has agents, employs individuals, and/or transacts business . . . in numerous counties throughout the State of California" (Compl. ¶ 9), is insufficient to establish that its principal place of business is in California. *Zelidon v. Ground Servs. Int'l Inc.*, No. 2:22-cv-01626-

has not satisfied the requirement under 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc), it denies the motion to remand on this basis alone and need not address the additional arguments.

24cv1743

SVW-AS, 2022 WL 3013228, at *1–2 (C.D. Cal. May 4, 2022) (finding declarant's conclusory statements about the location of corporate headquarters and corporation's activities insufficient to establish a corporation's principal place of business).

Likewise, Lopez's argument that General Dynamics "is registered with the California Secretary of State to conduct business in California" is equally unpersuasive. (ECF No. 12 at 13:22–23.)  The United States Supreme Court has made clear that the address listed on government filings is not dispositive of the issue of a corporation's principal place of business.  *Hertz*, 559 U.S. at 97 (rejecting the suggestion that "the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"); *see also Eckerle v. Deutsche Bank Nat'l Trust*, CIV. 10–00474 SOM, 2010 WL 3984687, at *2 (D. Haw. Sept. 17, 2010) ("[J]ust because a corporation is registered to do business in a certain state does not make that state its 'principal place of business.'").

Accordingly, because Lopez has failed to offer any evidence to show that General Dynamics's principal place of business is California, and it is undisputed that General Dynamics is incorporated in Virginia, she has not met her burden of proving that General Dynamics is "a citizen of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).  Plaintiff's failure to satisfy this requirement under the local controversy exception to CAFA thus renders the exception inapplicable.

\* \* \*

Overall, General Dynamics persuasively shows the amount in controversy surpasses the $5,000,000 required by CAFA.  Furthermore, because General Dynamics establishes subject matter jurisdiction by a preponderance of the evidence pursuant to CAFA, and the Court finds that the local controversy exception does not apply, the Court has jurisdiction over the action under CAFA.  Accordingly, Plaintiff's Motion to Remand is denied.

24cv1743

## MOTION TO DISMISS

### I. Legal Standard

Under Rule 12(b)(6), the court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not accept conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged enough facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] their claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a

1  probability requirement, it demands more than "a sheer possibility that a defendant has
2  acted unlawfully." *Id.* at 678.

3     When a court grants a motion to dismiss under Rule 12(b)(6) for failure to state a
4  claim, it must also decide whether to grant leave to amend.  Under Rule 15(a)(2), granting
5  leave to amend rests within the trial court's sound discretion.  *Swanson v. United States*
6  *Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  The Ninth Circuit has held that leave to
7  amend should be freely granted.  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d
8  1074, 1079 (9th Cir. 1990).

9  **II.    Analysis**

10    General Dynamics moves to dismiss the Eighth Cause of Action in the FAC, in
11  which Lopez alleges that "the California Labor Code [violations] . . . constitute unfair,
12  unlawful and/or fraudulent business practices in violation of [the UCL]" (FAC ¶ 81), and
13  further moves to strike language asserting those allegations and seeking injunctive relief.[4]
14  (ECF No. 7-1 at 1:21–22.)

15    The UCL "prohibits, and provides civil remedies for, unfair competition, which it
16  defines as 'any unlawful, unfair or fraudulent business act or practice.'"  *Kwikset Corp. v.*
17  *Superior Ct.*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200).  Each
18  "prong" of the UCL provides a separate theory of liability.  *See Cel-Tech Commc'ns, Inc.*
19  *v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *Podolsky v. First*
20  *Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996)) ("Because Business and Professions
21  Code section 17200 is written in the disjunctive, it establishes three varieties of unfair
22  competition—acts or practices which are unlawful, or unfair, or fraudulent.").  Actions
23  brought under the UCL are equitable in nature, meaning plaintiffs may seek only injunctive

---

26    [4]  Because the Court grants General Dynamics's Motion to Dismiss the Eighth Cause of Action
27  with leave to amend, its Motion to Strike is **DENIED** as premature.  *See Shubin v. Farinelli Fine Antiques*
   *Corp.*, Case No. C 15-1401 LB, 2015 WL 3464443, at *4 (N.D. Cal., May 29, 2015) (denying motion to
28  strike where the underlying claim was dismissed with leave to amend, rendering the motion premature);
   *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1111 (9th Cir. 2003).

relief or restitution, not damages. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)); *see also Kwikset*, 51 Cal. 4th at 337 ("Injunctions are 'the primary form of relief available under the UCL to protect consumers from unfair business practices,' while restitution is a type of 'ancillary relief.'") (citation omitted).

Lopez asserts that General Dynamics's business practices "[have] been, and continue[] to be, unfair, unlawful, and harmful to Plaintiff, other Class members, and to the general public." (FAC ¶ 79.) Lopez avers that she and the class "ha[ve] no plain, speedy, and/or adequate remedy at law" and that, absent prospective relief, they "will continue to suffer irreparable harm." (*Id.* ¶ 93.) Lopez seeks injunctive and declaratory relief, "restraining the Defendants . . . from engaging in any of the []described unfair, unlawful and/or fraudulent business practices in the future." (*Id.* ¶ 92.) In addition, she seeks "restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint[.]" (*Id.* ¶ 95.) Finally, Lopez seeks attorneys' fees under California Code of Civil Procedure § 1021.5, asserting that she "seeks to enforce important rights affecting the public interest." (*Id.* ¶¶ 79, 95.)

General Dynamics argues that Lopez cannot state a cause of action under the UCL because she "fails to assert nonconclusory facts that she lacks an adequate remedy at law and therefore fails to adequate[ly] plead a claim for equitable relief under [the UCL]." (ECF No. 7-1 at 1:3–5.) Additionally, General Dynamics contends that "as a former employee, she lacks Article III standing to pursue injunctive relief for herself and the putative class she seeks to represent." (*Id.* at 1:19–21.)

In response, Lopez asks the Court to deny General Dynamics's motions to dismiss and strike, setting forth five key grounds: (1) Defendant "lacks subject matter jurisdiction to bring its motion to dismiss and strike in federal court" because it "improperly removed this action based on unsupported assumptions regarding jurisdiction under [CAFA]";[5] (2)

---

[5] As previously discussed, the Court finds that General Dynamics has satisfied its burden to establish jurisdiction under CAFA by a preponderance of the evidence, and that the local controversy

24cv1743

Even if the Court grants any part of Defendant's motions, it "should remand the UCL claim, allowing Plaintiff to seek relief in state court"; (3) Lopez has "Article III standing to pursue injunctive relief for herself and the Putative Class because the [UCL] permits cumulative relief," allowing her "to seek remedies under the UCL and other statutory claims, including California labor code claims, that would otherwise provide for an adequate remedy at law"; (4) The "UCL claims are not wholly derivative of the labor code claims"; and (5) dismissal would be "premature," since "there is no procedural bar to a federal court plaintiff pleading alternative remedies," and the Court "should not reach the issue of dismissal or strike until a later procedural posture, when there is more certainty as to whether the legal relief sought would in fact be adequate."  (ECF No. 9 at 1:6–23.)

### A.    Lopez Lacks Article III Standing to Seek Injunctive Relief

A challenge to standing is properly raised under Rule 12(b)(1).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).") (emphasis omitted).  Although General Dynamics raised its standing challenge under Rule 12(b)(6), "federal courts have a duty to raise, sua sponte, questions of standing." *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("[A] jurisdictional issue such as Article III standing may be raised sua sponte by the court at any time.") (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3) (requiring that "the court must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction.").

The statutory standing requirements under the UCL are distinct from the standing requirements applicable in federal court.  California Business and Professions Code § 17204 provides that a plaintiff "who has suffered injury in fact and has lost money or

---

exception does not apply.  Accordingly, Lopez's jurisdictional challenge to the Motion to Dismiss lacks merit.

property as a result of the unfair competition" has standing to seek relief under the UCL. Nevertheless, in federal court, a plaintiff must still satisfy the requirements of Article III to pursue injunctive relief, even if she would otherwise have standing in state court. *Kajberouni v. Bear Valley Cmty. Servs. Dist.*, 641 F. Supp. 3d 888, 895 (E.D. Cal. 2022) ("[A] state statute cannot alter the constitutional standing requirements of federal courts." (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004)). The Ninth Circuit explained:

> Even if Cal. Bus. & Prof. Code § 17204 permits a plaintiff to pursue injunctive relief in California state courts as a private attorney general even though he or she currently suffers no individualized injury as a result of a defendant's conduct, "a plaintiff whose cause of action [under § 17204] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury" to establish Article III standing.

*Hangarter*, 373 F.3d at 1022 (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001)) (alteration in original). As the Ninth Circuit has observed, "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical," and a plaintiff seeking injunctive relief "must demonstrate a *real or immediate threat* of an irreparable injury." *Id.* at 1021 (citation omitted) (emphasis in original). Because the plaintiff in *Hangarter* lacked a "contractual relationship" with the defendant, the court concluded that he faced no personal threat of future harm and therefore lacked standing to pursue injunctive relief. *Id.*

In the employment context, the Ninth Circuit has repeatedly applied this principle of standing, determining that a "former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding a former employee "lacked standing to sue for injunctive relief from which she would not likely benefit")*; Slayman v. FedEx Ground Package System, Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014) (finding former

employees "lacked Article III standing to seek prospective relief"). Here, because Lopez has not alleged any facts sufficient to support a conclusion that she has a need for prospective relief—or even could benefit from it—as a former employee of General Dynamics, she lacks standing to pursue injunctive relief.

### B.    Lopez Fails to Plead Inadequacy of Legal Remedies for Restitution

Relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020), and *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022), General Dynamics argues that dismissal is appropriate because Lopez fails to allege nonconclusory facts demonstrating that she lacks an adequate remedy at law. (ECF No. 7-1 at 1:2–16.) As a result, the Court "lacks equitable jurisdiction over the UCL claim necessary for [it] to exercise its remedial power under principles of equitable relief—as held by the Ninth Circuit's binding precedent." (*Id.* at 1:2–10.) The Court agrees.

To obtain equitable relief pursuant to the UCL, a plaintiff must establish the inadequacy of a remedy at law as a prerequisite to such relief. *Sonner*, 971 F.3d at 844 (a plaintiff "must establish that [the plaintiff] lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL . . . ."). At the pleading stage, courts "generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Gibson v. Jaguar Land Rover N. Am.*, LLC, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (citing cases); *Sonner*, 971 F.3d at 844 (affirming Rule 12(b)(6) dismissal of UCL claim where plaintiff did not establish an inadequate remedy at law).

Lopez contends that *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020) controls, arguing that the UCL "offer[s] 'cumulative relief,' such that [a] plaintiff can seek equitable relief even when there is also a legal remedy available[.]" (ECF No. 9 at 5:17–18.) In *Moore*, the Ninth Circuit reversed the district court's dismissal of the plaintiffs' UCL, California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, and California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 claims in part because the "Defendants' argument that Plaintiffs cannot seek equitable relief under the

UCL or FAL, given an adequate legal remedy under the CLRA, is foreclosed by statute [since] . . . [t]he UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other."  966 F.3d at 1021 n.13.

Nonetheless, the Court finds that Lopez's UCL claim is insufficiently pleaded. Arguing that the UCL permits "cumulative relief" does not relieve her of the obligation to allege facts showing that legal remedies are inadequate. In *Sonner*, the Ninth Circuit held that a plaintiff "must establish that [it] lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL" and noted that "[r]egardless of whether California authorizes its courts to award equitable restitution under the UCL . . . when a plain, adequate, and complete remedy exists at law, [] federal courts rely on federal equitable principles before allowing equitable restitution in such circumstances."  971 F.3d at 844–45.  Although Lopez argues that *Moore*—decided shortly after *Sonner*—controls, *Sonner* was amended just one month after *Moore* was filed, and neither the amended *Sonner* opinion nor *Moore* reference the other.  *See generally Sonner*, 971 F.3d 834; *Moore*, 966 F.3d 1007.  Moreover, the Ninth Circuit reaffirmed *Sonner* in *Guzman*, holding that "[i]n order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy."  49 F.4th at 1313.

Lopez urges the Court to rely on *Ayala v. U.S. Xpress Enters., Inc.*, which declined to follow *Sonner* and determined that the plaintiff's UCL claim was redressable "despite having an adequate legal remedy" because "remedies under the UCL are cumulative."  No. EDCV 16-137-GW-KKx, 2022 WL 16859754, at *3 (C.D. Cal. July 22, 2022) (citing *Moore*, 966 F.3d at 1021 n.13).  That unpublished decision is not precedential and does not bind the Court, whereas *Guzman*—a more recent, published Ninth Circuit opinion— constitutes controlling authority.  Moreover, the *Moore* footnote relied upon in *Ayala* has been recognized by other courts as nonbinding dicta.  *See, e.g.*, *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159, at *3 (C.D. Cal. Feb. 10, 2021) ("The Court . . . concludes that the clear holding in *Sonner*, not the dictum in *Moore*,

controls whether Plaintiffs' UCL claim is subject to an 'adequate legal remedy' requirement."); *Shay v. Apple Inc.*, No. 20cv1629-GPC(BLM), 2021 WL 1733385, at *4 (S.D. Cal. May 3, 2021) ("[A]ll district courts . . . confronted with the argument that *Moore* should be the authority courts should follow instead of *Sonner* have all rejected the significance of the footnote in *Moore*.").

In sum, because Lopez has failed to plead facts demonstrating that she lacks an adequate remedy at law, the Court finds that she does not have equitable standing to seek restitution under the UCL.

### C.    Lopez's UCL Claims Are Derivative of Her Labor Code Violations

Lopez contends that the UCL claims asserted on behalf of herself and the putative class "are not wholly derivative of the labor code claims in that different relief is sought under each of the respective claims." (ECF No. 9 at 8:14–16.) However, the Court is not persuaded that the mere fact that the remedies available under the UCL and California Labor Code are different relieves a plaintiff of the obligation to satisfy *Sonner's* threshold requirement to plead facts establishing that legal remedies are inadequate. Lopez's Eighth Cause of Action rests exclusively on the same allegations underlying her seven Labor Code claims and does not identify any independent basis for equitable relief. (FAC ¶¶ 77–95.)

Lopez further argues the "UCL claim is not wholly derivative of [the] labor code claims in that the UCL claim provides additional relief to a slew of former and current employees that would otherwise be excluded from seeking redressability." (ECF No. 9 at 8:27–9:3.) Lopez contends that "the scope of the Putative Class would be greatly limited by the California Labor Code's three-year statute of limitations . . . By contrast, under the UCL's statute of limitations provision, '[a]ny action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued.'" (*Id.* at 8:22–26.) However, courts within the Ninth Circuit have held that "a different limitations period is not sufficient to demonstrate inadequacy of a legal remedy." *Taylor v. Sam's W., Inc.*, 2020 WL 12947973, at *2 (C.D. Cal. Dec. 4, 2020) (collecting cases); *Gutierrez v. Ericsson Inc.*, EDCV 23-1665-GW-SHKx, 2024 U.S. Dist. LEXIS 32829, at

*16–17 (C.D. Cal. Feb. 21, 2024) ("[E]ven if a Labor Code damages claims were time barred . . . that fact alone would not establish class members' entitlement to equitable relief under the UCL, given that the only bases for such a claim are those very same time-barred Labor Code claims." (citing *Guzman*, 49 F.4th at 1313)); *Fan v. Home Depot U.S.A., Inc.*, No. 1:21-cv-01355 WBS KJN, 2022 WL 16964099, at *4 (E.D. Cal. Nov. 16, 2022) ("[M]ultiple courts—including courts comparing the statutes of limitations of the UCL and the California Labor Code—have found that a shorter statute of limitations alone does not render a legal remedy inadequate."). Consistent with these decisions, the Court finds that Lopez has not sufficiently alleged the absence of an adequate legal remedy.

Ultimately, "[n]owhere in the [FAC] do[es] Plaintiff[] clearly allege facts suggesting that monetary damages would not make [her] whole." *See Clevenger v. Welch Foods Inc.*, No. SACV 20-01859-CJC (JDEx), 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022); *Easton v. Wells Fargo & Co.*, No. 2:20-cv-06070-AB-RAO, 2022 WL 17886002, at *3 (C.D. Cal. Dec. 6, 2022) ("Plaintiff has not alleged any facts suggesting that Plaintiff does not have an adequate remedy at law. Plaintiff's [FAC] shows that Plaintiff's claim is based on the same conduct that makes up Plaintiff's other causes of actions—failure to pay wages.").

In sum, the Eighth Cause of Action is wholly derivative of the Labor Code claims, and the fact that the UCL and Labor Code provide different remedies or have different statutory limitations periods does not alter the *Sonner* analysis or establish equitable jurisdiction in federal court. Accordingly, the Court finds that the FAC does not adequately plead the absence of an adequate legal remedy, and the Eighth Cause of Action must be dismissed.

## D.    Remand of the UCL Claim to State Court Is Not Warranted

Having concluded that Lopez lacks equitable jurisdiction to proceed with her UCL claim in federal court, the Court is not persuaded that remanding the UCL claim to state court is warranted. *See Kim v. Walmart, Inc*, No. 2:22-CV-08380-SB-PVC, 2023 WL 196919, at *3 (C.D. Cal. Jan. 13, 2023) (denying partial remand because "[l]ack of

24cv1743

equitable jurisdiction over some claims cannot serve as a basis for remanding a case in its entirety" and "[the plaintiff] cites no authority that permits the Court to enter a partial remand in this case"); *see also Travonne Hooks v. Dignity Health*, No. CV 22-07699 DSF (PDx), 2022 WL 17968833, at *3 (C.D. Cal. Dec. 27, 2022) (dismissing without prejudice plaintiff's equitable claims because the plaintiff also brought claims establishing adequacy of legal remedies). Lopez cites to *Guthrie v. Transamerica Life Ins. Co.,* 561 F. Supp. 3d 869, 872 (N.D. Cal. 2021), in support of her argument that the UCL claim should be remanded to state court. (ECF No. 9 at 4:6–20.) In *Guthrie*, the court addressed the novel argument that a plaintiff's failure to plead the lack of an adequate legal remedy under *Sonner* warranted remand of a case seeking only equitable relief. 561 F. Supp. 3d at 875–76. However, the key distinction here is that Lopez also brings claims under the California Labor Code, which provide for legal remedies, and therefore must plead the inadequacy of those remedies to proceed with her UCL claim for equitable relief in federal court.

Lopez also "requests that this Court preserve the UCL claims and prayers for relief on the basis that there is no federal procedural bar to pleading alternative remedies and a determination to dismiss or strike the UCL claims and prayers for relief would be premature at this juncture." (ECF No. 9 at 11:11–15.) As discussed previously, *Sonner* explains that a plaintiff must show that legal remedies are inadequate before seeking equitable restitution under the UCL, as federal courts apply federal equitable principles regardless of state law. *Sonner*, 971 F.3d at 844–45. Consequently, the argument that a plaintiff may plead equitable remedies in the alternative "has been explicitly rejected by numerous courts post-*Sonner*." *Clevenger*, 2022 WL 18228288, at *4 (collecting cases); *Diaz v. Georgia Pac. Corrugated LLC*, 2022 WL 20689543, at *3 (C.D. Cal. Oct. 27, 2022) ("Diaz argues that he may plead his claim for equitable relief in the alternative, but that argument was foreclosed by *Sonner*."). Thus, the Court finds that Lopez may not plead the Eighth Cause of Action in the alternative.

That said, because it is not entirely clear that amendment would be futile, the Court dismisses the Eighth Cause of Action with leave to amend. *See Lopez v. Smith*, 203 F.3d

1122, 1130 (9th Cir. 2000) ("Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'") (quoting *Balistreri*, 901 F.2d at 701); *Ctr. for Bio. Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear . . . that the complaint could not be saved by any amendment.'") (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022)).

Accordingly, the Eighth Cause of Action in the FAC is **DISMISSED WITH LEAVE TO AMEND**.

**CONCLUSION**

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 8.)  Furthermore, the Court **GRANTS** the Motion to Dismiss, and the Eighth Cause of Action in the FAC is **DISMISSED WITH LEAVE TO AMEND**.  (ECF No. 7.)

If Lopez wishes to file a Second Amended Complaint ("SAC") amending the Eighth Cause of Action, Plaintiff may file a SAC by **August 25, 2025**.  Lopez is cautioned that the SAC may not add new claims or parties, or otherwise change the allegations, except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  If Lopez does not file a SAC by that date, the dismissal of the Eighth Cause of Action will be deemed with prejudice, and the case will proceed on the remaining claims.  General Dynamics shall file a response to the operative complaint, be it the FAC or the SAC, by no later than **September 8, 2025**.

**IT IS SO ORDERED.**

**DATED: August 11, 2025**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

24cv1743